**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

MIGUEL CATALA,

     Plaintiff,

         v.                      CIV. NO. 08-1822 (PG)

DEPARTMENT OF VETERANS AFFAIRS,

     Defendant.

---

**OPINION AND ORDER**

    Plaintiff Miguel Catala (hereinafter "Plaintiff" or "Catala") filed this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. ("Title VII") against the Department of Veteran Affairs ("the DVA", "The Department" or "Defendant"), alleging discrimination on the basis of sex and retaliation for engaging in protected conduct. See Docket No. 1. Specifically, Catala claims that his managerial duties were removed, that he was not selected for promotion, and that he was transferred to another department in violation of Title VII.[1]

    The Department now moves for summary judgment requesting the dismissal of the claims brought forth by the Plaintiff on the grounds that Catala failed to exhaust administrative remedies, that his claim is time-barred and that he is unable to establish that Defendant's reasons for its employment actions are a pretext for discrimination and/or retaliation. See Docket No. 25. The Plaintiff timely opposed the Defendant's motion. See Docket No. 30. Also before the Court are the Defendant's reply and Plaintiff's sur-reply. See Dockets No. 40, 43.

    After a close examination of all the evidence on record and a careful review of the applicable statutory and case law, the Court **GRANTS** the DVA's motion for summary judgment for the reasons explained below.

---

[1] The Court notes that in his opposition, the Plaintiff makes a perfunctory reference to a hostile work environment claim that is not alleged in the complaint, see Docket No. 1, and Plaintiff has not requested its amendment. "This Court has held that it will not allow a plaintiff to amend his/her allegations through his/her opposition pleading." Rivera-Mercado v. Scotiabank De Puerto Rico-International, 571 F.Supp.2d 279, 289 (D.P.R. 2008). Consequently, the Court will not address or consider that claim herein.

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir.2000). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir.2004).

To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, see DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir.1997), through definite and competent evidence. See Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir.1994). Once the movant has averred that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-movant to establish the existence of at least one fact in issue that is both genuine and material. See Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990) (citations omitted). If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. See Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir.2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). However, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990).

At the summary judgment juncture, the Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir.2002). The Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000). This is so, because credibility determinations, the weighing

of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Id.

## II. FACTUAL FINDINGS

Before setting forth the facts found by this Court to be undisputed and relevant to the matter at hand, we must first address several compliance issues presented to the Court when reviewing Defendant's and Plaintiff's statements of facts.

"Documents supporting or opposing summary judgment must be properly authenticated." Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir.2000) (citing Fed.R.Civ.P. Rule 56(e)). To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e). See 10A Wright, Miller & Kane, Federal Practice & Procedure § 2722 (3d ed.1998). "Under Federal Rule of Civil Procedure 56(e), on summary judgment, the parties in their supporting affidavits shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Hoffman v. Applicators Sales And Service, Inc., 439 F.3d 9, 14 (1st Cir.2006). "Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Id. "The failure to authenticate a document properly precludes its consideration on a motion for summary judgment." Robinson v. Bodoff, 355 F. Supp. 2d 578, 582 (D.Mass.2005) (striking all exhibits that were submitted without affidavits).

Moreover, a party must not "[overlook] the crucial point that documents do not automatically become a part of the record simply because they are the products of discovery." Hoffman, 439 F.3d at 15. "If a party wishes the court to consider matters disclosed during discovery, he must take appropriate steps to have them included in the record: merely citing to pages of discovery materials not of record does not suffice." Id.

Pursuant to the foregoing, some of the materials submitted by both the Plaintiff and the Defendant are inadmissible for the purposes of summary judgment. After a careful review of the record, this Court finds that many of the exhibits submitted by the parties in support of their statements of fact lack an authenticating affidavit or fail to indicate whether they stem from discovery materials on file. As a result, unless admitted by the opposing party, the Court did not consider the factual statements submitted by the parties that were not properly supported by the record on file.

As per the foregoing discussion, the Court found the following relevant facts were undisputed:

1.   Plaintiff commenced to work with the Defendant as work-study in the year 1985. During the next seventeen years from the year 1987 to 2005 Plaintiff worked at the Human Resources Service of the DVA.

2.   On November 28, 2004, Plaintiff held the position of Human Resources Specialist at the San Juan Veterans Administration Medical Center ("VAMC") until October 15, 2005, when he became a Program Specialist Grade 12 in the Health Benefits Administration ("HBA") of the Department.

3.   Plaintiff was working under the supervision of Myriam Zayas ("Zayas"). After one year in this position, Plaintiff was promoted to a Grade 13.

4.   At some point on or before December of 2006, Catala was called as a witness during a Board of Investigation (BOI) that was convened as a result of a sexual harassment complaint against a supervisor.

5.   After Plaintiff's participation in the BOI, his managerial duties were removed.[2]

6.   During an investigation carried out by an Equal Employment Opportunity Counselor, Zayas testified, among other things, that she thought Plaintiff took advantage of his position and undermined her; that the employee that complained of sexual harassment discussed her claim with Catala, and Catala did not do anything to resolve the issue and failed to inform Zayas of the situation as well; that after the BOI, Zayas informed Plaintiff that he could no longer be an Acting Chief in her absence and could not perform other duties that involved management because she could not longer trust him. Zayas allowed Plaintiff to remain in her department, but removed all managerial duties from the Plaintiff. See Exhibit 26, Docket No. 31.

7.   On November 27, 2006, a vacancy announcement was made for the position of Human Resources Officer.

8.   Catala and Damaris Tosado ("Tosado"), among others, applied for the position.

9.   Three internal VA employee candidates were qualified by David Green,

---

[2] It is uncertain from the record when exactly this employment action took place. Nevertheless, the Plaintiff alleges in his complaint that his removal from a supervisory position took place on November 2006. See Docket No. 1 at ¶ 15. However, in the EEO investigation report submitted by the Plaintiff as an exhibit to his response, the Plaintiff testified that this action took place in December of 2006. See Exhibit 26, Docket No. 31.

Chief of Human Resources Management Service VAMC West Palm Beach, Florida, who also served as technical consultant to the interview panel. On the Merit Promotion Certificate of the DVA prepared by Mr. Green on December 21, 2006, they are listed in alphabetical order by last name: Miguel Catala, Tito Santiago,Jr. and Damaris Tosado.

10.   Six candidates were scheduled for interview, the three from the internal DVA certificate and three external candidates.

11.   The interview panel was composed of DVA employees from several different VA facilities: Michelle Manderino, Chief of Human Resources, VAMC Gainesville, Florida; Dr. Antonio Sánchez, Chief of Psychiatry, VAMC San Juan, Puerto Rico; Malcolm Porter, EEO/HR Manager for the region of VISN 8 of the DVA; and Olga Elías, Associate Chief of Nursing Service, VAMC San Juan, Puerto Rico.

12.   Catala reported on his application that he does not possess a university degree, although he did have some college credits.

13.   On February 7, 2007, Plaintiff was advised that he had not been selected for the position of Human Resources Officer.

14.   On February 14, 2007, Plaintiff requested a reassignment to the Pharmacy Service.

15.   On February 15, 2007, the Associate Center Director of the VAMC San Juan Center, Helen Nunci ("Nunci") selected the highest ranked candidate, Damaris Tosado, for the position.

16.   Tosado had a total average score of 27.75 out of a possible 30 points, while Catala was next to last in the ranking, scoring fifth with a total average of 16.25 points.

17.   On February 20, 2007, Plaintiff reported a claim of reprisal and disability and race discrimination to the Office of Resolution Management, and an Equal Employment Opportunity Counselor was assigned to the matter, Case No. 200I-0672-2007101541. See Exhibit 28, Docket No. 37.

18.   By March 4, 2007, Plaintiff's reassignment to the Pharmacy Service was approved.

19.   During the EEO investigation, Ms. Nunci gave her testimony to the EEO Counselor. She testified that she was one of the selecting officials and that she thought the selectee, Damaris Tosado, surpassed the other applicants in terms of her qualifications, experience and interview

performance. Nunci also stated that Catala was not even among the three highest scores among the applicants.

20.   During the investigation, Catala complained that after the BOI in December of 2006, Zayas eliminated several of his duties. However, it stems from the investigation report that immediately thereafter the EEO Counselor advised Catala that the claims that were untimely would not be accepted during the formal complaint process. See Exhibit 26, Docket No. 31.

21.   On April 12, 2007, Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") and requested a hearing regarding his non-selection to the position of Human Resources Officer and the harassment he suffered after participating in a BOI against a supervisor.

22.   On August 21, 2007, Plaintiff also filed a formal complaint with the EEOC regarding his reassignment from Health Business Administration to Pharmacy Service, Case No. 200I-0672-2007103119.

23.   Catala's illegal transfer case, Case No. 200I-0672-2007103119, was dismissed on November 19, 2007 through a Final Agency Decision ("FAD") for failure to comply with the applicable time limits to initiate contact with an EEO Counselor. See Docket No. 24, Exhibit 13.

24.   Approximately five months later, on April 29, 2008, a FAD regarding Case No. 200I-0672-2007101541 was issued. The Plaintiff's claim that he was transferred to another department in retaliation for participating in a sexual harassment investigation was dismissed as untimely whereas his claim of discriminatory non-selection was found to have no merit. See Exhibit 37, Docket No. 31.

25.   Catala filed the above-captioned claim on July 29, 2008.

### III. DISCUSSION

**A. Title VII**

#### 1. Plaintiff Failed to Exhaust Administrative Remedies

"Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended, prohibits employment discrimination on the basis of race, color, religion, sex, or national origin." Ricci v. DeStefano, 129 S.Ct. 2658, 2672 (2009). Pursuant to Title VII, a plaintiff is required to exhaust his/her administrative remedies before suing in federal court, including by filing a complaint with the Equal Opportunity Employment Commission (EEOC). See Uphoff Figueroa v. Alejandro, 597 F.3d 423, 431 (1st Cir.2010) (quoting

214c32bd04000136

<u>Frederique-Alexandre v. Dep't of Natural & Envtl. Res.</u>, 478 F.3d 433, 440 (1st Cir.2007); <u>Jorge v. Rumsfeld</u>, 404 F.3d 556, 564-65 (1st Cir.2005)). Hence, a federal entity "may only be sued in federal court if the aggrieved employee or applicant for employment has exhausted all available administrative remedies." <u>Misra v. Smithsonian Astrophysical Observatory</u>, 248 F.3d 37, 40 (1st Cir.2001).

"The [EEOC] was assigned the responsibility of establishing the mechanisms and deadlines for employees and applicants to employment to initiate the administrative process for claims based on discrimination encompassed within Title VII." <u>Colon v. Mills</u>, 646 F.Supp.2d 224, 233 (D.P.R. 2009) (<u>citing</u> 42 U.S.C. § 2000e-16(b)). Pursuant to authority granted under the statute, the EEOC has issued regulations requiring a federal employee to initiate contact with an EEOC counselor within 45 days of the alleged discriminatory act, and then file an administrative complaint with the agency prior to filing suit in federal court. <u>See</u> 29 C.F.R. § 1614.105. "Failure to contact the counselor within the 45-day term provided by the regulations causes plaintiff to lose the right to subsequently bring suit in court." <u>Colon v. Mills</u>, 646 F.Supp.2d at 234 (<u>quoting</u> <u>Roman-Martinez v. Runyon</u>, 100 F.3d 213, 217 (1st Cir.1996)). The aggrieved person must then file a judicial complaint within 90 days of receipt of notice of the final action taken by the agency. <u>See</u> 42 U.S.C. § 2000e-16(c).

In its motion for summary judgment, the Defendant argues that the allegations pertaining to the elimination of his managerial duties should be dismissed inasmuch as Plaintiff failed to exhaust administrative remedies. In response to this argument, the Plaintiff simply states that these allegations were "investigated by Defendant during the administrative process. Therefore, Defendant's memorandum is wrong." <u>See</u> Docket No. 30 at page 3. After much effort, the Court is unable to understand the point of Plaintiff's argument. At any rate, we agree with the Defendant.

According to Plaintiff's own allegations and statements, the removal of his managerial/supervisory duties took place on or about December of 2006 after his participation as a witness during an investigation of a sexual harassment claim against a supervisor. <u>See</u> Findings of Fact #4-5. In addition, it is uncontested that Plaintiff initiated contact with an EEOC counselor on February 20, 2007. <u>See</u> Findings of Fact #17. Even if the removal of his managerial duties took place on the last day of December of 2006, his initial contact with the EEOC was untimely by at least six (6) days. In fact, it is

so noted in the EEO Counselor's investigative report submitted by the Plaintiff that he was advised as to the untimeliness of this particular claim. See Exhibit 26, Docket No. 31 at page 5.

Because Catala's initial contact was beyond the statutory 45-day term, this Court finds that Plaintiff failed to exhaust his administrative remedies regarding this particular retaliation claim. Accordingly, the Defendant's motion is **GRANTED** and Plaintiff's claim of retaliation regarding the removal of his managerial duties is hereby **DISMISSED.**

**2. Claim of Illegal Transfer is Time-Barred**

The Defendant also argues that the complaint was filed beyond the statutory 90-day term after the final agency decisions and are thus time-barred. To that effect, the Plaintiff responded in his opposition that inasmuch as the FAD was issued on April 29, 2008 and he received it on May 5, 2008, he had until August 5, 2008 to file a complaint in federal court. Let's see.

As previously stated, the aggrieved person must file a judicial complaint within 90 days of **receipt** of notice of the final action taken by the EEOC. See 42 U.S.C. § 2000e-16(c). In addition, this district has previously held that in cases in which the date of a Title VII claimant's receipt of a right-to-sue letter or notice of dismissal is either disputed or cannot be established, FED.R.CIV.P. 6(d) creates a presumption that the communication was received by the plaintiff three days after it was issued by the EEOC. See Vargas-Caban v. Sally Beauty Supply Co., 476 F.Supp.2d 109, 113-114 (D.P.R. 2007) (citing Sanchez Ramos v. P.R. Police Dept., 392 F.Supp.2d 167, 175 (D.P.R.2005)). See also Hill v. Textron Auto Interiors, Inc., 160 F.Supp.2d 179, 183 (D.N.H.2001) ("In the absence of evidence to the contrary, courts will presume that a plaintiff received his or her right-to-sue letter three days after the EEOC mailed it").

It stems from the record that Catala received two separate Final Agency Decisions regarding different claims of discrimination. The first FAD dismissing his administrative claim regarding his transfer or reassignment from Health Business Administration to Pharmacy Service, Case No. 200I-0672-2007103119, is dated November 19, 2007. The second FAD dismissing his claim of discriminatory non-selection and retaliation, Case No. 200I-0672-2007101541, is dated April 29, 2008. The present claim was filed on July 29, 2008, that is, 253 days from the issuance of the first FAD and 91 days from the second. Applying the three-day "grace period" provided in Federal Rule of

Civil Procedure 6(d) to the second EEOC claim, we find that it is timely. However, the Plaintiff also includes an action for his illegal transfer in the above-captioned claim, a claim that was dismissed by the EEOC well over 90 days before the filing of this lawsuit. And although equitable tolling is available in exceptional circumstances to extend the statute of limitations, Abraham v. Woods Hole Oceanographic Institute, 553 F.3d 114, 119 (1st Cir.2009), the Plaintiff here has failed to show that exceptional circumstances are present here.

Pursuant to the foregoing, Catala's claims of discrimination and/or retaliation as they pertain to his transfer to the Pharmacy Service department are time-barred and thus **DISMISSED**.

### 3. Failure to Promote Claim

Remaining before the Court is Catala's claim that the Defendant retaliated and discriminated against him on the basis of sex by failing to promote him, instead assigning a less-qualified female employee to the position. The Defendant moves to dismiss this claim in its motion for summary judgment arguing that it had a legitimate non-discriminatory reason for its action, namely, that it selected a more qualified individual for the position.

In the absence of any direct evidence of gender discrimination, a plaintiff's claim is generally governed by the burden shifting scheme set out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Lockridge v. The University Of Maine System, 597 F.3d 464, 470 (1st Cir.2010) (quoting Garcia v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 n. 2 (1st Cir.2008)). "Under this scheme, a plaintiff-employee must first establish a prima facie case of gender discrimination." Lockridge, 597 F.3d at 470 (citing Kosereis v. Rhode Island, 331 F.3d 207, 212 (1st Cir.2003)). A plaintiff establishes a prima facie case by showing the following: (1) that he is a member of a protected class; (2) that he was qualified for the job; (3) that the employer took an adverse employment action against him; and (4) that the position remained open or was filled by a person with similar qualifications. See Kosereis, 331 F.3d at 212-213 (internal citations omitted).

A similar scheme is applied to Title VII retaliation cases. Title VII's anti-retaliation provision forbids discrimination against employees because they have opposed practices that are unlawful under Title VII. See 42 U.S.C. § 2000e-3. To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: (1) that he engaged in protected conduct, (2) that he

suffered an adverse employment action, and (3) that there was a causal connection between the protected conduct and the adverse employment action. See Calero-Cerezo, 355 F.3d at 25.

Once the plaintiff has made a prima facie showing … , the McDonnell Douglas burden-shifting approach is employed, and defendant must articulate a legitimate, non-retaliatory and/or non-discriminatory reason for its employment decision. See id. at 26; Lockridge, 597 F.3d at 470. If the defendant meets this burden, the plaintiff must now show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory and/or discriminatory animus. See Calero-Cerezo, 355 F.3d at 26; Lockridge, 597 F.3d at 470.

In its motion for summary judgment, the Defendant assumes arguendo that the Plaintiff is able to establish a prima facie case of sex discrimination. See Docket No. 25 at page 9. Therefore, so will we for purposes of this order. In addition, the Court finds that the Plaintiff also meets the requirements of a prima facie case of retaliation.

In the case at hand it is uncontested that Catala participated as a witness in a sexual harassment investigation. See Finding of Fact No. 4. Thus, the first element of the applicable three-part test is fulfilled. As to the adverse employment action requirement, the First Circuit has held that "[t]o be adverse, an action must materially change the conditions of plaintiffs' employ." Gu v. Boston Police Dept., 312 F.3d 6, 14 (1st Cir.2002). "Material changes include 'demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees.'" Id. (citing Hernández- Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir.1998)). Here, the DVA denied the Plaintiff's application for promotion on February 7, 2007. See Finding of Fact No. 13. Consequently, the second requirement is also met. As to the final prong of the test, the law makes clear that "there are many sources of circumstantial evidence that can demonstrate retaliation in a way sufficient to leap the summary judgment hurdle. One way is to show a close temporal proximity between the protected conduct and the adverse employment action." Salgado-Candelario v. Ericsson Caribbean, Inc., 614 F.Supp.2d 151 (D.P.R. 2008) (citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st Cir.1991); Wyatt v. City of Boston, 35 F.3d 13, 16 (1st Cir.1994); DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir.2008)). Here, the denial of Catala's application for promotion took place within two (2) months of his participation in the

internal sexual harassment investigation. Considering the time lapse between the protected conduct and the DVA's failure to promote him, we find that Plaintiff has successfully established a prima facie case of retaliation.

Now, as stated above, if the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory non-retaliatory reason for its employment decision and to produce credible evidence to show that the reason advanced was the real reason. See Freadman v. Metropolitan Property and Cas. Ins. Co., 484 F.3d 91, 99 (1st Cir.2007) (citing Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 105 (1st Cir.2005)). In its motion for summary judgment, the Defendant set out proof that the selectee, Damaris Tosado, out-scored the Plaintiff's performance in the application rounds and was better qualified than Catala. In his response, the Plaintiff admits to lacking a college degree and does not deny that Tosado was "a more educated applicant." See Docket No. 30 at pages 2, 5. Nevertheless, according to the Plaintiff, he was a better applicant to the extent he had more experience than Tosado in the field of human resources. Additionally, the Plaintiff proffered that his non-selection was the result of a convoluted scheme by his former supervisor and one of the selecting officials, Ms. Nunci, with whom he was in bad terms. Finally, Catala claimed, without more, that his non-selection was also in retaliation for his participation in the BOI some months prior. See Docket No. 30.

Catala's arguments suggesting pretext are simply unconvincing. And even if we were to credit Plaintiff's theories, it is uncontested that he did not even rank among the first three applicants. So, even if Tosado would not have been the selectee, somebody other than Plaitiff would have. At any rate, even if we disagree with the DVA's personnel decisions, "a matter on which we take no view, courts may not sit as super personnel departments, assessing the merits-or even the rationality-of employers' … business decisions." Meuser v. Federal Express Corp., 564 F.3d 507, 519 (1st Cir.2009) (quoting Mesnick v. General Electric Co., 950 F.2d 816, 825 (1st Cir.1991)) (internal quotation marks omitted).

"The ultimate burden of proving unlawful discrimination rests at all times with [Plaintiff]." Tobin, 433 F.3d at 105. Plaintiff here has failed to meet his and as a result, his gender-based and retaliation claim challenging the Defendant's failure to promote him is hereby **DISMISSED**.

CIV. NO. 08-1822 (PG)                                                    Page 12

## IV. CONCLUSION

For the reasons stated above, this Court hereby **GRANTS** Defendant's motion for summary judgment (Docket No. 23). Accordingly, the sex discrimination and retaliation claims asserted in the complaint are hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, April 21, 2010.


                                        S/ JUAN M. PEREZ-GIMENEZ
                                        JUAN M. PEREZ-GIMENEZ
                                        U.S. DISTRICT JUDGE